## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

KIM REDIGAN and DENISE GRIEBLER,

               Plaintiffs,

                                      Case No.

v.

                                        Hon.

CITY OF DETROIT;
DETROIT 300 CONSERVANCY, a Michigan
Non-Profit Corporation; DOWNTOWN
DETROIT PARTNERSHIP, a Michigan        **COMPLAINT**
Non-Profit Corporation; DOWNTOWN
BUSINESS IMPROVEMENT ZONE;
JANE DOE I, in her individual capacity;
JANE DOE II, in her individual capacity,

               Defendants.

_____/

Michael J. Steinberg (P43085)
Eman Naga*
Grace Vedock*
Civil Rights Litigation Initiative
University of Michigan Law School
701 S. State St., Suite 2020
Ann Arbor, MI 48109
(734) 763-1983
mjsteinb@umich.edu
enaga@umich.edu
gvedock@umich.edu

Counsel for Plaintiffs

* Student Attorney practicing pursuant to
Local Rule 83.21

_____/

## **INTRODUCTION**

1.      Plaintiffs Kim Redigan and Denise Griebler bring this action to vindicate their right to protest for peace in a Detroit public park, as guaranteed by both the First Amendment and Detroit's free speech ordinances.

2.      Ms. Redigan and Rev. Griebler are members of the Ceasefire Choir, a faith-based musical collective that advocates for world peace through song.

3.      On December 30, 2023, Plaintiffs and approximately ten members of the Ceasefire Choir gathered near the holiday tree in Campus Martius, a public park in Downtown Detroit. The choir sang carols advocating for a ceasefire in the Middle East and held signs reading: "Peace & Joy, Ceasefire Now," "Ceasefire Now," and "End Antisemitism and Islamophobia."

4.      When nearby security guards realized that the songs were not standard Christmas carols, they approached Plaintiffs and told them that they had to stop because Campus Martius was private property, that Campus Martius is a "neutral," family" space, and that the Choir's songs were "controversial."

5.      In 2014, an advocacy group brought a nearly identical case for prohibiting protest in Campus Martius against Defendants City of Detroit and Detroit 300 Conservancy, a non-profit organization that manages the park for Detroit. The case was settled after the City of Detroit passed ordinances that allow

up to twenty-five people to demonstrate at Campus Martius without a permit, except under limited circumstances that do not apply here.

6.      Last winter, not only did Defendants fail to follow the Detroit ordinances, but they also violated Plaintiffs' First Amendment right to speak in a public park on matters of public concern.

7.      In May, Ms. Redigan, through undersigned counsel, wrote a letter to Defendants City of Detroit and Detroit 300 asking for assurances that security guards would be trained on the free speech rights of residents so that protestors were not unlawfully censored at Campus Martius in the future. (See letter attached as Exh. A). However, neither the City nor Detroit 300 have agreed to properly train the security guards.

8.      In fact, Campus Martius security guards continue to tell park visitors that they cannot demonstrate at Campus Martius because it is a "private park."

9.      Plaintiffs and the Ceasefire Choir want to exercise their rights to sing for peace in Campus Martius again this holiday season without fear of censorship. They bring this action seeking injunctive relief ordering Defendants to comply with the First Amendment and the Detroit ordinances and to properly train their employees about the rights of protesters in Campus Martius.

## JURISDICTION AND VENUE

10.     Plaintiffs bring this case under 42 U.S.C. § 1983 and the First Amendment to the United States Constitution. This Court has subject matter jurisdiction and is authorized to grant relief Plaintiffs relief pursuant to 28 U.S.C. §§ 1331 and 1343.

11.     Supplemental jurisdiction is proper under 28 U.S.C. § 1367 because the Plaintiffs' state law claim arises out of the same case and controversy as the claim brought under the United States Constitution.

12.     Venue is proper in the Eastern District of Michigan pursuant to 28 U.S.C. § 1391(b) because it is the judicial district where Plaintiffs and Defendants are located or reside, and it is where the majority of the events and omissions giving rise to this action occurred.

## PARTIES

13.     Plaintiff Kimberly Redigan is a resident of Detroit, Michigan.

14.     Plaintiff Denise Griebler is a resident of Pennsylvania who lives in Detroit, Michigan for approximately five months of the year. She spends the summers, December, and January in Detroit. She is an ordained minister in the United Church of Christ

15.     Defendant City of Detroit is a municipal corporation.

4

16.     Defendant Detroit 300 Conservancy ("Detroit 300") is a registered 501(c)(3) non-profit corporation headquartered in Detroit, Michigan. Because Detroit 300 performs the public function of managing a public park, and it works in concert with the City of Detroit to do so, it is considered a public entity acting under the color of state law for the purposes of 42 U.S.C. § 1983.

17.     Defendant Downtown Detroit Partnership is a registered 501(c)(3) non-profit corporation headquartered in Detroit, Michigan. Detroit 300 is a subsidiary of Downtown Detroit Partnership. Because the Downtown Detroit Partnership performs the public function of managing a public park, and it works in concert with the City of Detroit to do so, it is considered a public entity acting under the color of state law for the purposes of 42 U.S.C. § 1983.

18.     Defendant Downtown Detroit Business Improvement Zone ("BIZ") is a public body registered under Chapter 2 of 1961 PA 120, as amended, Mich. Comp. Laws 125.990 to 125.990n (the "BIZ Act"). It is located in Detroit, Michigan. The BIZ contracts with the Downtown Detroit Partnership to manage day-to-day operations.

19.     Defendants Jane Doe I and Jane Doe II are security guards employed by Defendants City of Detroit, Detroit 300, Downtown Detroit Partnership, and the BIZ. "Jane Doe" is a pseudonym, as Plaintiffs do not yet know their actual names. Plaintiffs will amend this complaint to list Defendant Does' names when

they are learned through discovery. Jane Doe I and Jane Doe II are sued in their

individual capacities. Because the Jane Doe Defendants were performing the

public function of managing a public park, and were working in concert with the

City of Detroit, they are considered public actors acting under the color of state

law for the purpose of 42 U.S.C. § 1983.

### Campus Martius is a Municipally-Owned Public Park that is Managed by Private Entities Acting Under Color of State Law.

20.     Advertised as Detroit's "Gathering Place," a "city of Detroit treasure,"

and the "Top Public Square" in the United States, Campus Martius Park ("Campus

Martius") is a public park located in the center of downtown Detroit at the

intersection of Woodward Avenue, Michigan Avenue, Fort Street, Monroe Street

and Cadillac Square, owned by the City of Detroit, and created for all individuals

to use and enjoy year-round.[1]

21.     Campus Martius is "owned by the City and operated directly by the

Recreation Department or through contractors." Detroit, Mich., City Code, ch. 33,

§ 33-2-21 (2015).

---

[1] *Campus Martius*, Downtown Detroit P'ship, https://downtowndetroit.org/experience-downtown/downtown-detroit-parks/campus-martius/ (last visited Nov. 17, 2024).

22.     Detroit has delegated the management of the park to multiple private

entities, including Defendants Detroit 300, the Downtown Detroit Partnership, and

the BIZ.[2]

23.     The management, maintenance, and operation of Campus Martius is

governed by a Professional Services Agreement ("PSA") between the City of

Detroit and Detroit 300. (See PSA attached as Exh. B).

24.     The PSA was in effect at all times relevant to this suit.

25.     Detroit 300, the Downtown Detroit Partnership, the BIZ, and the

security guards are state actors because they are performing a function that has

traditionally been the exclusive prerogative of the government. *See Lansing v. City

of Memphis,* 202 F.3d 821, 828–29 (6th Cir. 2000); *Street v. Corr. Corp. of Am.*,

102 F.3d 810, 818 (6th Cir. 1996).

26.     Because these private entities are state actors when managing Campus

Martius, they must manage the park consistent with the United States Constitution

and refrain from violating visitors' constitutional rights. *Id.*

---

[2] The BIZ provides "[s]ervices [and] functions," including "parks maintenance," to supplement "the services, functions, and projects of the City of Detroit." Downtown Detroit Business Improvement Zone, https://downtowndetroit.org/about-the-ddp/business-improvement-zone/ (last visited Nov. 17, 2024). Campus Martius is in the BIZ's "Zone Area." Downtown Detroit Business Improvement Zone, *Zone Plan* 3 (2024), https://downtowndetroit.org/wp-content/uploads/DDBIZ_Zone-Plan-for-2nd-Qualifying-Period_2024-to-2034.pdf.

### The *Moratorium Now! v. Detroit 300 Conservancy* Settlement
### and Detroit's Free Speech Ordinances.

27.     This is not the first time that Defendants City of Detroit and Detroit 300 have been sued for violating the rights of protesters in Campus Martius

28.     In 2015, the ACLU of Michigan sued the City and Detroit 300 on behalf of political advocacy organizations Moratorium Now! and Women in Black when Defendants prohibited them from exercising their First Amendment rights in Campus Martius.

29.     In that case, the Detroit Police Department and Detroit 300's security guards forced individuals to leave Campus Martius for leafletting, marching silently through the park, and gathering signatures on a petition. (See complaint in *Moratorium Now! v. Detroit 300 Conservancy*, attached as Exh. C).

30.     As part of a settlement, the City of Detroit agreed to enact ordinances that regulate the time, place, and manner of gatherings in Campus Martius. Detroit, Mich., City Code, ch. 33, §§ 33-2-31 to -32 (2015) (hereafter, "Free Speech Ordinances," attached as Exh. D).

31.     The Free Speech Ordinances allow groups of up to twenty-five people to protest at Campus Martius without a permit as long as they do not use amplifiers, stay more than ten feet from the restaurant and ice rink, do not utilize any of the art installations, statutes, or trees in the park, do not unduly interfere with any previously-issued permits or scheduled events, and do not use stages or

tents erected in connection with other scheduled events. *Id.* §§ 33-1-61(b) and 33-2-31.

32.     Only "groups of more than twenty-five individuals who desire to engage in . . . demonstration activities" must obtain a permit from the Recreation Division before engaging in First Amendment activities. *Id.* § 33-2-31.

### Even Though Plaintiffs and the Ceasefire Choir Complied with Detroit's Free Speech Ordinances, Defendants Forced Them to Stop Demonstrating.

33.     Ceasefire Choir is an interfaith organization that advocates for peace in the Middle East, specifically in Palestine and Israel. It is an informal organization that typically demonstrates by singing political songs while carrying banners and picket signs.[3]

34.     Ms. Redigan and Rev. Griebler are members of the Ceasefire Choir. They were present at both December and January incidents described below. Both Plaintiffs intend to participate in Ceasefire Choir protests at Campus Martius in the future.

35.     On Saturday, December 30, 2023, thirteen faith-based activists associated with the Ceasefire Choir organized a demonstration in Campus Martius.

36.     Plaintiffs participated in the demonstration as members of the choir.

---

[3] Ceasefire Chorus, *Ceasefire Chorus Public Toolkit* 2, 12–13 (Date Unknown), https://docs.google.com/document/d/1x0lUEvQGo48r1Kvf0sUE2TqwnBWiAe8T/edit.

37.     Plaintiffs and the Ceasefire Choir sang holiday carols with modified lyrics that called for peace in Gaza and the region.

38.     Choir members carried a banner that read "Peace & Joy, Ceasefire Now" and held signs that included messages such as "Love Thy Neighbor" and "End Antisemitism and Islamophobia."



39.     One demonstrator handed out leaflets while the others sang.

40.     The Choir positioned themselves in front of a large holiday tree in the north end of the Park. At no point during their demonstration did any members of the Choir use amplifiers, come within ten feet of the restaurant or ice rink, climb any structures, interfere with previously permitted and/or scheduled events, interrupt vehicular or pedestrian traffic, or endanger other individuals. They always stayed at least ten feet away from outdoor dining areas and the ice rink.

41.     Approximately forty-five minutes after the group began singing, three security guards, including Defendant Jane Doe I, approached the Ceasefire Choir.

42.     Defendant Jane Doe I identified herself as a supervisor and demanded that the Choir stop singing due to the controversial nature of the carols.

43.     Jane Doe I told the Ceasefire Choir that they could not demonstrate in Campus Martius because they were on "private property."

44.     Jane Doe I told the Ceasefire Choir that the singing itself was not the problem, but that they were not allowed to sing about controversial subjects in the park because it is a "family space."

45.     Jane Doe I appeared angry throughout the interaction.

46.     Jane Doe I threatened to call the police if the Ceasefire Choir did not stop singing.

47.     Plaintiffs stepped aside to talk with other security guards while the rest of the group continued singing.

48.     Ms. Redigan showed the security guards a letter from the City's corporation counsel explaining the Free Speech Ordinances adopted in response to the *Moratorium Now! v. Detroit 300* lawsuit. (See attached as Exh. E).

49.     Defendant Jane Doe I nevertheless insisted that the Choir was not allowed to demonstrate in the park because it was "private property" and because of the controversial, political nature of the songs.

50.     Defendant Jane Doe II then escorted Plaintiffs out of the park.

51.     Defendant Jane Doe II also told Plaintiffs that she was afraid that she would be fired if the Ceasefire Choir did not leave.

52.     When Plaintiffs returned to the group, Ms. Redigan asked Defendant Jane Doe I to contact someone from the city and to photograph the letter from the City's corporation counsel explaining the Free Speech Ordinances.

53.     Defendant Jane Doe I reluctantly took a photo of the City's letter detailing the relevant ordinances but refused to contact anyone from the city.

54.     Defendant Jane Doe I again falsely told Plaintiffs that Campus Martius is private property and that they were not allowed to sing about controversial topics.

55.     Plaintiffs and the Ceasefire Choir eventually agreed to leave the park because they feared arrest if they persisted in asserting their rights.

**Defendants forced Plaintiffs to stop protesting in**
**Campus Martius again on January 5, 2024.**

56.     On January 5, 2024, Defendant Jane Doe I again prevented Plaintiffs and the Ceasefire Choir from demonstrating in Campus Martius.

57.     That day, Plaintiffs and twenty-two other Choir members began a demonstration by singing outside of Senator Debbie Stabenow's Detroit office, located approximately one block west of Campus Martius.

58.     The Choir then walked to Campus Martius, where they intended to march and sing on the sidewalk around the perimeter of the park.

59.     Ms. Redigan and the Choir complied with the requirements of City Code Ordinance §§ 33-2-31 and 33-2-32.

60.     Defendant Jane Doe I saw Plaintiffs and the Choir as they approached Campus Martius.

61.     Before the Choir even began singing, Jane Doe I told them that they were not allowed to sing in the park.

62.     The Choir then left Campus Martius without demonstrating.

63.     Since the incident on January 5, the Ceasefire Choir has not held another demonstration in Campus Martius.

64.     But for Defendants' actions, Plaintiffs and the Ceasefire Choir would continue to lawfully exercise their First Amendment rights in the park.

**Plaintiff Kim Redigan has Sought, But Not Received, Assurances from Defendants That They Will Stop Censoring Lawful Demonstrations in Campus Martius and That They Will Train the Security Guards to Comply with the Detroit Free Speech Ordinances.**

65.     On May 8, 2024, Plaintiff Kim Redigan, through her attorneys, sent a letter to the City of Detroit, Detroit 300, and the City of Detroit Police Department explaining the facts above. (See letter attached as Exh. A).

66.     In the letter, Ms. Redigan requested assurances that the City and Detroit 300 would (1) abide by the City's Free Speech Ordinances, (2) allow Ms.

Redigan and the Ceasefire Choir to demonstrate in Campus Martius on May 22, 2024, (3) train their employees and contractors on Detroit's Free Speech Ordinances, and (4) develop protocols allowing demonstrators to contact officials from the City and Detroit 300 should problems arise in the future.

67.     On May 19, 2024, an unrelated group of demonstrators protesting the war in Gaza entered Campus Martius. A security guard told this group of demonstrators that they could not protest in Campus Martius because it was private property.

68.     On May 21, 2024, the General Counsel to the City of Detroit Mayor's Office sent a response e-mail to Ms. Redigan's lawyers providing assurance that Ms. Redigan and the Ceasefire Choir would be allowed to demonstrate in Campus Martius in a manner consistent with Detroit's Free Speech Ordinances on May 22, 2024.

69.     He also told Ms. Redigan's lawyers that a full response to the letter was forthcoming.

70.     On June 6, 2024, Ms. Redigan's lawyers sent a follow-up email asking when the City would provide a comprehensive response about whether the City had informed Detroit 300 of the applicable ordinances and the assurances it provided to Ms. Redigan.

71.     The City did not respond to Ms. Redigan's June 6 email.

72.     Detroit 300 never responded to Ms. Redigan's May 8 letter.

73.     On July 26, 2024, three individuals separately approached three different security guards and asked whether they could hold a small demonstration in Campus Martius. All three of the security guards said that such protests were not allowed. None of the security guards were aware of the provisions of Detroit's Free Speech Ordinances.

74.     The first security guard said that no one can protest in Campus Martius because it is "private property."

75.      The second security guard asked what the protest was about. When told the protest would be about Palestine, the security guard said that they could not protest in Campus Martius because the topic is too controversial for a "family" area.

76.     The third guard asked whether the protest would be about Gaza. When told that it would be, the security guard said that the individual should first seek a permit and directed them to speak to Downtown Detroit Partnership.

77.     Defendants' actions have prevented Ms. Redigan and Rev. Griebler from lawfully exercising their First Amendment rights. Because they have not received assurances from Defendants that they will refrain from violating their constitutional right to speak freely, they have not returned to Campus Martius to protest.

78.     But for Defendants' insistence that Campus Martius is "private property," Ms. Redigan and Rev. Griebler would return to Campus Martius to lawfully protest for peace in Palestine.

79.      Plaintiffs have no adequate remedy at law.

## CAUSES OF ACTION

### Count I: First Amendment Freedom of Speech and 42 U.S.C. § 1983

80.     Plaintiffs reallege and incorporate by reference all allegations in the preceding paragraphs.

81.     Public parks are quintessential public fora where the First Amendment protects individuals' rights to speak, exchange political opinions, and protest.

82.     Defendants' actions have deprived Plaintiffs of their First Amendment right to protest and assemble in Campus Martius.

83.     Government officials and private parties acting under color of state law are liable at law and equity under 42 U.S.C. § 1983 for violating rights guaranteed by the U.S. Constitution. *See Simescu v. Emmet Cnty. Dep't. of Soc. Servs.*, 942 F.2d 372, 374 (6th Cir. 1991).

84.     At all times relevant to this complaint, the City of Detroit and the BIZ acted under the color of state law because they are public bodies.

85.     At all times relevant to this complaint, the other Defendants acted under color of state law by conspiring and acting in concert with each other and

the City of Detroit to perform the public function of managing access to and use of

Campus Martius, a traditional public forum. Defendants Detroit 300, the

Downtown Detroit Partnership, and the BIZ maintain a close nexus and/or

symbiotic relationship with the City of Detroit while performing the public

function of managing access to and use of Campus Martius, a traditional public

forum.

86.    The Doe Defendants violated Plaintiffs' clearly established First

Amendment rights when they prohibited Plaintiffs and the Ceasefire Choir from

singing in Campus Martius on December 30, 2023 and January 5, 2024.

87.    Defendants City of Detroit, Detroit 300, the Downtown Detroit

Partnership, and the BIZ violated the First Amendment rights of Plaintiffs by

failing to properly train their security guards, including the Doe Defendants, on

their official duty to not violate park visitors' constitutional rights.

88.    Defendants City of Detroit, Detroit 300, the Downtown Detroit

Partnership, and the BIZ maintain a policy, practice, or custom of prohibiting

people from singing songs with political messages in Campus Martius.

89.    Defendants City of Detroit, Detroit 300, the Downtown Detroit

Partnership, and the BIZ's failure to train their security guards manifests

Defendants' deliberate indifferences towards Plaintiffs' First Amendment rights.

## Count II: Mandamus Action Compelling Defendants to Comply with Detroit's Free Speech Ordinances

90.     Plaintiffs reallege and incorporate by reference all allegations in the preceding paragraphs.

91.     Michigan courts can issue writs of mandamus against public officials pursuant to Mich. Comp. Laws §§ 600.4401-31 and Mich. Ct. Rule 3.305.

92.     Plaintiffs seeking a writ of mandamus under Michigan law must show that (1) the defendant has a clear legal duty to perform some act; (2) plaintiffs have a clear legal right to the defendant's performance of the duty; (3) the act is ministerial; and (4) there is "no other adequate legal or equitable remedy . . . that might achieve the same result." *Taxpayers for Mich. Const. Gov't v. Dept's Tech., Mgmt., & Budget*, 972 N.W.2d 738, 754–55 (2021) (quotation marks and citations omitted).

93.     Defendants City of Detroit, Detroit 300, the Downtown Detroit Partnership, and the BIZ have a clear legal duty to refrain from interfering with demonstrations in Campus Martius that comply with Detroit's Free Speech Ordinances.

94.     Plaintiffs have a clear legal right to Defendants' performance of their duty to refrain from interfering with demonstrations in Campus Martius that comply with Detroit's Free Speech Ordinances.

95.     Refraining from interfering with demonstrations in Campus Martius that comply with Detroit's Free Speech Ordinances is a ministerial act because Defendants have no discretion to prevent a person from engaging in lawful conduct.

96.     There is no adequate alternative legal or equitable remedy to compel the Defendants to refrain from interfering demonstrations in Campus Martius that comply with Detroit's Free Speech Ordinances.

## RELIEF REQUESTED

97.     For the reasons set forth above, Plaintiffs respectfully request that the Court grant the following relief against Defendants:

A. Enter judgement in favor of Plaintiffs and against Defendants;

B. Declare that Defendants violated Plaintiffs' First Amendment rights by prohibiting Plaintiffs from protesting in Campus Martius;

C. Enter preliminary and permanent injunctive relief:

a. Enjoining Defendants from unconstitutionally impeding lawful protests in Campus Martius that comply with the Detroit Free Speech Ordinances;

b. Requiring Defendants to implement appropriate measures to ensure that all security guards are trained to enforce Detroit's

Free Speech Ordinances and act consistently with the United States Constitution;

D.  Issue a writ of mandamus against Defendants compelling them to enforce Detroit's Free Speech Ordinances as they are written and to refrain from interfering with demonstrations in Campus Martius that comply with Detroit's Free Speech Ordinances;

E.  Award Plaintiffs compensatory damages and punitive damages, or, in the alternative, nominal damages, for violation of their First Amendment rights;

F.  Award Plaintiffs costs and attorneys' fees pursuant to 42 U.S.C. § 1988; and

G.  Grant such other and additional relief that the Court finds just and appropriate under the circumstances.

Respectfully submitted,

/s/Michael J. Steinberg
Michael J. Steinberg (P43085)
Eman Naga*
Grace Vedock*
Civil Rights Litigation Initiative
University of Michigan Law School
701 S. State St., Suite 2020
Ann Arbor, MI 48109
(734) 763-1983
mjsteinb@umich.edu
enaga@umich.edu
gvedock@umich.edu

Counsel for Plaintiffs

* Student Attorney practicing pursuant to
Local Rule 83.21

Dated: November 18, 2024